## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARINA DE PONCE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION, AS RECEIVER OF<br>DORAL BANK,<br><br>Defendant. | CIVIL NO. 15-1664 (CVR) |

## OPINION AND ORDER

## INTRODUCTION

This case aptly demonstrates the importance of consigning important agreements to writing. Plaintiff Marina de Ponce, Inc. ("Plaintiff" or "Marina") brings forth the present case against the now defunct Doral Bank, Doral Financial, members of its Board of Directors and others. The complaint avers that in 2001, Marina obtained a loan from Doral to help finance the development and construction of the "Marina de Ponce" project, a combined residential and commercial marina project to be built in Ponce, Puerto Rico. Said loan was memorialized in writing through a credit approval, loan agreement, and promissory note, which Marina repaid in full.

Plaintiff posits, however, that said loan was only a partial disbursement of a larger loan that Doral orally agreed to make and later failed to disburse, thereby causing the project's ultimate failure. Thus, Marina brings forth causes of action under Puerto Rico law for breach of contract, breach of the principle of good faith, fraudulent inducement, tortious interference with a contract and *culpa in contrahendo,* all stemming from Doral's alleged failure to disburse the additional loan for the construction of the project.

Although this case was originally filed in state court in 2006 against the aforementioned parties with different causes of action, Defendant herein Federal Deposit Insurance Corporation, as receiver of Doral Bank ("Defendant" or "FDIC-R") removed the case to this Court pursuant to Title 12, United States Code, § 1819(b)(2)(B) and/or Title 28, United States Code, § 1442, after Doral was closed by the Office of the Puerto Rico Commissioner of Financial Institutions in February, 2015 and the FDIC was appointed Doral's receiver.   By operation of federal law, the FDIC as receiver acquired all of Doral's rights, titles, powers, privileges, assets, and liabilities, including Doral's interests and status as a party in this pending action.   Title 12, United States Code, §§ 1821(d)(2)(A) and 1821(d)(2)(B).

Before the Court now is Defendant FDIC-R's "Second Motion for Summary Judgment" (Docket No. 81), Plaintiff's Opposition thereto (Docket No. 90), Defendant's Reply to Plaintiff's opposition (Docket No. 102), and Plaintiff's Sur-reply to Defendant's Reply. (Docket No. 115).

For the reasons explained below, the Court GRANTS the FDIC-R's Motion for Summary Judgment, and DISMISSES WITH PREJUDICE this case.

## STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed.R.Civ.P. 56 (c).   Pursuant to the language of the rule,

the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." <u>Vega-Rodríguez v. Puerto Rico Tel. Co.</u>, 110 F.3d 174, 178 (1st Cir. 1997).

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." <u>Cortés-Irizarry v. Corporación Insular</u>, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. <u>Id</u>. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." <u>Id</u>. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1st Cir. 1994).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." <u>Hernández v. Philip Morris USA, Inc.</u>, 486 F.3d 1, 7 (1st Cir. 2007); <u>see also</u> <u>Colón v. Infotech Aerospace Servs., Inc.</u>, 869 F.Supp.2d 220, 225-226 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not- genuinely controverted.' " <u>Calvi v. Knox County</u>, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 imposes guidelines for both the movant and the party opposing summary

judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must "admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c). If they so wish, they may submit a separate statement of facts which they believe are in controversy. Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); <u>P.R. Am. Ins. Co. v. Rivera-Vázquez</u>, 603 F.3d 125, 130 (1st Cir. 2010) and <u>Colón</u>, 869 F.Supp.2d at 226. Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril." <u>Hernández</u>, 486 F.3d at 7.

At the outset, the Court must mention that Plaintiff's Opposition to Defendant's statement of uncontested material facts was procedurally non-compliant with the Local Rules. The denials presented by Plaintiff Marina do not oppose the truth of the statement offered and are either irrelevant to the matter at hand, provide additional evidence not related to the fact in question and/or failed to contradict it, or consisted of mere "speculation, generalities, conclusory assertions, improbable inferences, and, for lack of a better phrase, a lot of 'hot air.' " <u>Domínguez v. Eli Lilly and Co.</u>, 958 F.Supp. 721, 728 (D.P.R. 1997). As a result thereof, the Court deemed admitted all of Defendant's proffered facts.

In addition, and even more problematic, is the evidence used by Marina to support

both its Opposition to the FDIC-R's Motion, and its Reply statement of additional facts, to wit, an unsworn statement under penalty of perjury of Adrián Mercado ("Mercado"). The Court is cognizant that Federal Rule of Civil Procedure 56 allows for, among other things, affidavits to be used in supporting a party's claims and defenses. See Fed. R. Civ. P. 56 (c)(1)(A). In this case, however, the unsworn statement by Mercado appended to Plaintiff's Opposition, and which also forms the basis of Plaintiff's Reply statement of additional facts, is a close duplicate of the facts as alleged in the Third Amended Complaint (Docket No. 23), and happens to also be an almost exact duplicate of the Unsworn Statement under Penalty of Perjury of Federico Tomás Rodríguez ("Rodríguez") submitted with Plaintiff's Opposition to the FDIC-R's previous Motion for Summary Judgment, which the Court at that time did not entertain. (Docket No. 48). Thus, not only did Marina use Mercado's statement (which is almost identical to Rodríguez' statement, but changed in certain instances to give Mercado personal knowledge of the facts) in support of its Opposition to the FDIC-R's motions, but Mercado's statement also forms the basis of Marina's reply statement of additional facts. In turn, these same facts are the ones which the Third Amended Complaint is based upon, almost verbatim. This is fairly obvious, as Marina failed to even change Mercado's first person statements to third person when it converted the contents of his unsworn statement into Marina's statement of additional facts. See Plaintiff's "Statement of Additional Facts", Docket No. 116, p. 4, "That my name and personal circumstances are as stated above"; "That I have been the President of Marina de Ponce, Inc. since before the year 2000".

_____

At this stage, more is needed than a simple "copy and paste" of the allegations in the complaint. As has been well established, "mere allegations are not 'evidence'" Zilberstein v. Kendall College, 286 Fed. Appx. 938, 940 (7th Cir. 2008); see also Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 3 (1st Cir. 2010) ("mere allegations are not entitled to weight in the summary judgment calculus"); Tibbs v. City of Chicago, 469 F.3d 661, 663 fn. 2 (7th Cir. 2006) ("the entire 'Statement of Facts' section of Tibbs's appellate brief cites only to his amended complaint; mere allegations of a complaint are not evidence"); Fantini v. Salem State College, 557 F.3d 22, 26 (1st Cir. 2009) ("the Court shall not accept ... bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation, or subjective characterizations, optimistic predictions, or problematic suppositions"; Geshke v. Crocs, Inc., 740 F.3d 74, 78 (1st Cir. 2014); ("unverified allegations in a complaint are not evidence").

While Mercado might have personal knowledge of the facts of the case, his statement carries little weight for summary judgment purposes, insofar as it simply restates, almost word for word, the facts of the Third Amended Complaint, which are not evidence. Even worse, it is almost the exact same statement as that of another witness, Rodríguez. Therefore, the Court will not consider Mercado's statement in its analysis of the motion before it, or any of the documents that Mercado's statement references to.

## UNCONTESTED FACTS

1. On July 3, 2001, Doral and Marina executed a loan agreement for $6,600,000.00 (the "Loan Agreement") which was to be applied to "finance

the expenses related to the development and construction of the real estate of the project to be known as Marina de Ponce . . . and for other legitimate uses of the Debtor . . ." Docket No. 40-1 at 1. This loan had a due date of January 3, 2002. Id., p. 2.

2. On February 12, 2003, Marina and Doral agreed to amend the Loan Agreement, extending its due date to March 1, 2004 and increased the principal by $123,000.00 (the "First Amendment"). Docket No. No. 11-2, p. at 27.

3. On March 31, 2004, Marina and Doral agreed to amend the Loan Agreement a second time, extending the due date to March 1, 2005, and increasing the principal by $1,589,000.00, for a total principal amount of $7,652,000.00 (the "Second Amendment"). Docket No. 11-2, pp. 30-31.

4. On October 28, 2005, Marina paid off the $6,600,000.00 loan, as modified and amended. Docket No. No. 34-2, p. 11.

5. Besides the Loan Agreement and Amendments described above, there are no other written agreements between Marina and Doral pertaining to a second loan.

6. Besides the Loan Agreement and Amendments described above, there are no other written agreements signed by and between Marina and Doral pertaining to any other loan.

7. Besides the Loan Agreement, First Amendment, and Second Amendment,

the Minutes issued by Doral's Board of Directors do not evidence the existence of any other amendment or additional credit extension that was approved for Marina. Docket No. 34-3, p. 2; Docket No. 34-4, p. 6; Docket No. 34-5, p. 3.

8. The Minute dated October 23, 2001 of Doral's Board of Directors states: "[a]dditional funding was not approved by the Board; furthermore, borrower shall be notified that the Bank does not intend to offer the interim loan." Docket No. 34-4, p. 6.

9. Antonio Pavía Bibiloni ("Pavía"), a financial consultant and representative of Marina, stated that he never saw any communication in writing to conclude that the bank approved any additional loan asides from the Loan Agreement, First Amendment and Second Amendment. Docket No. 40-2, p. 2, l. 3-12. Pavía knew that the bank did not necessarily have to approve any additional or other loan. Id. at p. 2, l. 19-25; p. 3, l. 1-11.

10. Federico "Tommy" Rodríguez Binet ("Rodríguez Binet"), Marina's project manager, also admitted that there is no written document that states or concludes that Doral approved the loan alleged in the Third Amended Complaint. Docket No. 40-3, p. 2, l. 13-21. Rodríguez Binet admitted that the loan alleged in the Third Amended Complaint was verbal, and not confirmed in writing. Id. at p. 2, l. 13-32; p. 3, l. 1-18.

11. Ramón T. Balsa Rodríguez, Marina's accountant who prepared financial

statements for Marina and handled its accounting and tax matters, testified

that Marina's December 31, 2000 financial statement (which he prepared)

informed of a liability of approximately $3,600,000.00 in the form of a loan

from Banco Santander. Docket No. 40-4, p. 2, l. 1-25; p. 3, l. 1-25. He

further stated that the November 30, 2001 financial statement reflects the

$6,600,000.00 loan with Doral Bank. Id. p. 5, l. 1-25. Other balance sheets

and/or financial statements reflect the increase in the $6,600,00.00 loan

up to approximately $7,652,000.00, which had a due date of March 1, 2005.

Id., p. 7, l. 10-22. He did not have any written document evidencing

another loan from Doral, apart from the ones included in his prior reports.

Id., p. 9, l. 8-22. If he had had such information, he would have included

it in his reports. Id., p. 10, l. 1-5.

12. Marina's allegations in its Third Amended Complaint describe a verbal

agreement between it and Doral Bank officials to provide a $13,000,000.00

to $15,000,000.00 loan. Docket No. 23, at ¶¶ 1-11; 19; 51; 57-60; 74-76; 85;

101; 113-116; 119; 122; 128; and 135.

13. Marina's causes of action are all based in tort and breach of a verbal

agreement. Docket No. 23, at ¶¶ 59-142.

## LEGAL ANALYSIS

Defendant's "Second Motion for Summary Judgment" (Docket No. 81) is

straightforward. The issue presented by the FDIC-R here is whether Marina's claims

_____

meet the requirements outlined in Title 12, <u>United States Code</u>, §§ 1821(d)(9)(A) and 1823(e)(1).   The FDIC-R argues that Marina does not, and thus, the case cannot survive.

Plaintiff Marina responds by alleging that the statutes do not apply to this particular case due to the so-called "no asset exception." To this effect, Marina contends that the FDIC-R does not currently own the loan (i.e., the asset no longer exists) that Doral made to Plaintiff, because Marina paid off the loan before the FDIC-R became Doral's receiver.   As a second defense, Plaintiff argues that the <u>D'Oench</u> doctrine is no longer good law, having been invalidated under the Supreme Court decisions of <u>O'Melveny & Myers v. FDIC</u>, 512 U.S. 79, 114 S.Ct. 2048 (1994) and <u>Atherton v. FDIC</u>, 519 U.S. 213, 117 S.Ct. 666 (1997).   Thus, Plaintiff asserts that its claims against the FDIC-R are not barred.   Finally, Marina posits that summary judgment is not warranted for an independent reason, namely, outstanding discovery.

### A. The statute.

The federal statute at issue in this case codifies law that the Supreme Court initially set forth over seventy (70) years ago in <u>D'Oench, Duhme & Co. v. FDIC</u>, 315 U.S. 447, 62 S.Ct. 676 (1942).   <u>D'Oench</u> involved a bank (which subsequently failed) that tried to collect on a debt that was evidenced by a writing.   Defendant therein alleged that it had made a secret side-agreement with the bank and the bank had promised not to collect the basic debt. The Supreme Court held the defense invalid because the secret side-agreement "was designed to deceive the creditors or the public authority, or would tend to have that effect."   <u>D'Oench</u>, 315 U.S. at 460, 62 S.Ct. at 681.   In this way, the Court created a

special doctrine of estoppel, which precluded borrowers from asserting such defenses to protect the FDIC from "misrepresentations and secret agreements which might result in [the FDIC] incorrectly assessing the value of bank holdings for institutions which it insures, makes loans, or acquires in its corporate capacity." FDIC v. P.L.M. Int'l, Inc., 834 F.2d 248, 252 (1st Cir. 1987).

The rationale behind the D'Oench doctrine has been colorfully explained by the Fifth Circuit: "[t]he doctrine means that the government has no duty to compile oral histories of the bank's customers and loan officers. Nor must the FDIC retain linguists and cryptologists to tease out the meaning of facially-unencumbered notes. Spreadsheet experts need not be joined by historians, soothsayers, and spiritualists in a Lewis Carroll-like search for a bank's unrecorded liabilities." FDIC v. Hamilton, 939 F.2d 1225, 1230 (5th Cir. 1991) (quoting Bowen v. FDIC, 915 F.2d 1013, 1016 (5th Cir. 1990)).

Thus, the D'Oench doctrine prohibits bank borrowers and others from relying upon secret pacts or unrecorded side agreements that would diminish the FDIC's interests by attempting to thwart its efforts to collect under promissory notes, guarantees, and kindred instruments, among others, acquired from a failed bank if these agreements are not confined to written form. Borrowers' claims and affirmative defenses are treated the same under the doctrine. Timberland Design Inc., v. First Serv. Bank for Savings, Inc., 932 F.2d 46 (1st Cir. 1991).

Congress partially codified the holding in D'Oench eight (8) years later as Section 2(13)(e) of the Federal Deposit Insurance Act of 1950, 64 Stat. 873, 889, as amended,

which provided that no agreement shall be valid against the FDIC unless it is (a) in writing; (b) signed by the bank; (c) approved in the bank's minutes; and (d) kept in the bank's official records. Title 12, <u>United States Code</u>, § 1823(e)(1).

In 1989, and in the wake a mounting crisis in the banking and thrift industry, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101-73, 103 Stat. 183, "to give the FDIC power to take all actions necessary to resolve the problems posed by a financial institution in default." <u>FDIC v. Wright</u>, 942 F.2d 1089, 1096 (7th Cir. 1991). FIRREA substantially codified several of the significant common law developments in the <u>D'Oench</u> doctrine, and added a sweeping requirement – in now applied to "any agreement" which did not meet the four (4) requirements set forth in § 1823(e). Title 12, United States Code, § 1821(d)(9)(A).

Because the statute and doctrine have intertwined to the degree that it is difficult to determine where the statute ends and <u>D'Oench</u> begins, the cases discussed often refer to both doctrines interchangeably. While § 1823(e) is often referred to as the "codification" of <u>D'Oench</u>,[1] the common law <u>D'Oench</u> doctrine and § 1823(e) do not completely overlap. Courts have therefore applied the federal common law <u>D'Oench</u> doctrine to protect certain entities not covered by the language of § 1823(e)(1). <u>See</u> <u>In re NBW Commercial Paper Litig</u>., 826 F. Supp. 1448, 1466 (D.D.C. 1992) (stating that "<u>D'Oench</u> can best be described as a safety net" which "remains to cover situations which fall through the [statutory] cracks."). Thus, in tandem, § 1823(e) and <u>D'Oench</u>

---

[1] <u>See</u> <u>FDIC v. Wright</u>, 942 F.2d 1089, 1094 (7th Cir. 1991); and <u>RTC v. Feldman</u>, 3 F.3d 5, 7 (1st Cir. 1993).

_____

encourage "banks and their customers [to] include the entire extent of their obligations in the bank's records, thus allowing bank examiners to assess accurately the financial condition of the bank." Baumann v. Savers Fed. Sav. & Loan Ass'n, 934 F.2d 1506, 1515 (11th Cir. 1991).

### B. The no-asset exception.

Title 12, United States Code, § 1821(d)(9)(A) states that: "any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the Corporation". Title 12, United States Code, § 1821(d)(9)(A).

As stated before, Section 1823(e), in turn, states that:

"No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--

(A) is in writing,

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,

(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and,

_____

(D) has been, continuously, from the time of its execution, an official record of the depository institution." Title 12, United States Code, § 1823(e)(1).

It is fairly evident that these requirements are not met in the case at bar, insofar as Marina admits that the agreement in question was not in writing, but rather, was oral. Furthermore, the bank's minutes fail to evidence such an agreement and rather, state quite the opposite, to wit, that the bank would grant no further loans to Marina.

Plaintiff Marina counters stating that these requirements are inapplicable to this case, and raises an issue of statutory construction, namely, the "no-asset" exception. Marina argues that section 1823(e) is inapplicable because that section applies only to agreements which "tend to diminish or defeat the interest" of the FDIC in any asset acquired by it. Marina avers this section is inapplicable to the FDIC-R's defense because this exception has been applied where the asset, in this case the loan, has been discharged by the payment and cancellation of the underlying debt before the FDIC was appointed as the bank's receiver. The Court is unconvinced, and finds Defendant's well-reasoned arguments more in line with the applicable caselaw.

The Court first addresses the issue of statutory construction. Plaintiff avers that, since there is no asset involved, or if the asset does not diminish or defeat the FDIC's interests, then the claims are not barred. In so doing, Marina puts the cart before the horse in reading Section 1823(e) before Section 1821(d)(9)(A), whereby the "asset" requirement overrides the "any agreement" requirement.

First, the fact alone that the "any agreement" language precedes the "asset"

language should be an indicator that the "any agreement" requirement necessarily supersedes the "asset" requirement. Furthermore, a plain reading of the statute evidences that § 1821(d)(9)(A) states that "any agreement" which "does not meet the requirements set forth in section 1823(e)" cannot support a claim against the FDIC. Title 12, United States Code, § 1821(d)(9)(A). "Any agreement" means just that - ANY agreement. The requirements of the next section, in turn, are clearly enumerated and spelled out: in writing, executed by the bank, approved by the board, and kept in the bank's official records. The "asset" requirement that Marina seeks to include cannot be considered a fifth requirement, as Plaintiff would have the Court do. The requirements are four, and only four. No more. As the First Circuit Court of Appeals has made clear, in performing statutory interpretation, when the words of a statute are clear, the plain meaning of the statute will be enforced. See Campbell v. Washington County Technical Coll., 219 F.3d 3, 6 (1st Cir. 2000).

Defendant contends that if §1821(d)(9)'s applicability were also limited only to agreements which diminish the FDIC's interest in an asset acquired by the FDIC, it would add absolutely nothing to the protection already afforded to the FDIC in §1823(e), which applies to *all agreements* in general and is not limited to those that involve an asset. The Court agrees, because, as the FDIC correctly states, courts always avoid interpreting a statute in a manner that renders any section of a statute superfluous, insignificant, or void. United States v. Ramírez-Ferrer, 82 F.3d 1131, 1137-38 (1st Cir. 1996) (*quoting* United States v. Campos-Serrano, 404 U.S. 293, 301 n. 14, 92 S.Ct. 471, 476 n. 14 (1971).

The more logical reading of these two (2) statutes is that §1823(e) bars the enforcement of oral agreements that relate to assets held by the FDIC, and §1821(d)(9), which applies to "any agreement", and was later added to the federal statute, bars claims based on agreements that do not relate to assets acquired or held by the FDIC. This combined reading of the two statutes, in turn, is more in line with this district's previous holdings, where it has held §1821(d)(9)(A) bars all claims regardless of the existence of an asset, and furthermore, is consistent with the intent of FIRREA and D'Oench.

In 2011, this district dealt with §1821(d)(9)(A) in Ortíz-Hernández v. Westernbank of Puerto Rico, Civ. No. 10-1581, 2011 WL 1238907 (D.P.R. Mar. 25, 2011), a case involving a former Westernbank employee who sued when certain orally agreed-upon extra compensation was not awarded to him following his resignation. Westernbank then failed as a bank, and like here, the FDIC was appointed as receiver. The Court held that §1821(d)(9)(A) was clear in its application to "any agreement" that did not meet the requirements of Title 12, United States Code, § 1823(e) could form the basis of a claim against FDIC-R, emphasizing the "any agreement" language.

Marina argues that this district's decision in FDIC v. Bracero & Rivera, 895 F.2d 824 (1st Cir. 1990), which predates Hernández by a number of years is controlling, and where this Court previously held that Title 12, United States Code, § 1823(e) was inapplicable because, like here, the debt which formed the basis of the asset claimed by FDIC was satisfied before FDIC acquired the bank's assets. Yet, that case never mentioned the "any agreement" language because the lawsuit was filed in 1985, four years

before §1821(d)(9)(A) was enacted, and thus the Court never had an opportunity to analyze that particular issue. <u>Bracero</u> is therefore inapposite. The other cases cited by Plaintiff for this proposition also precede the "any agreement" amendment to the statute, and are therefore also inapposite.

Furthermore, Plaintiff's argument that no assets exist because it was paid off simply does not fall into line with federal intent, namely, to protect the bank examiners who rely on bank's records to assess the bank's condition, to protect the FDIC's ability to insure deposits, and make sure borrowers reduce the terms of their loan agreements to writing. <u>See also</u> <u>In re NBW Commercial Paper Litig</u>., 826 F. Supp. at 1461 (stating that one of the principal purposes behind FIRREA's amendment of § 1823(e) and creation of § 1821(d)(9)(A) was "to extend further protection to the federal government when stepping in for failed financial institutions"). Thus, the focal point of the inquiry is not the type of transaction involved, but "whether it contradicts what the bank has stated to the FDIC or is part of any effort to mislead the FDIC as to the financial status of any banking institution". <u>Castleglen, Inc. v. Resolution Tr. Corp</u>., 984 F.2d 1571, 1581 (10th Cir. 1993). Were the Court to accept Marina's no-asset argument here, the protection that Congress and the Supreme Court established would be thwarted.

In light of this analysis, the Court finds that the no-asset exception is inapplicable to this case, and finds Plaintiff's claims to be barred, insofar as there is no written agreement in compliance with the statute.

In a similar vein, the Court finds that the <u>D'Oench</u> doctrine separately would also

bar Marina's claims.    As previously stated, courts, including the First Circuit, have

applied the D'Oench doctrine and §1823(e) in tandem to maximize the protection

afforded to the FDIC.    Specifically, courts have often applied §1823(e) to agreements that

are related to assets, and the D'Oench doctrine to agreements that did not.    Thus, were

the Court to apply Marina's no-asset exception here, D'Oench would still bar its claims.

See OPS Shopping Center, Inc. v. Federal Deposit Insurance Corp., 992 F.2d 306, 309

(11th Cir. 1993) (holding that D'Oench applied to agreement related to general liability of

the bank, as opposed to a specific asset of the bank, and stating that D'Oench "now applies

in virtually all cases where a federal depository institution regulatory agency is confronted

with an agreement not documented in the institution's records"); Hill v. Samuel Cabot,

Inc., Civ. No. 92-11926-Z, 1993 WL 343673, at *3 (D. Mass. Aug. 26, 1993) (applying

D'Oench to an escrow arrangement); Timberland Design, Inc., 932 F.2d at 50 (D'Oench

protects the FDIC from affirmative claims based upon an oral agreement to lend money

in the future); Hall, 920 F.2d at 339 (citing instances where FDIC no longer has an

interest in an asset, but where the logic of D'Oench would still apply to protect FDIC); Inn

at Saratoga Assocs. v. F.D.I.C., 60 F.3d 78, 82 (2d Cir. 1995) (D'Oench is not limited to

circumstances where the agreement alleged relates to a traditional bank "asset" acquired

by the FDIC); In re: NBW Commercial Paper Litig., 826 F. Supp. at 1465 (stating that the

majority of courts who have considered the matter have determined that D'Oench may be

applied outside the lender-borrower context and needs no asset to apply);   First State

Bank v. City & County Bank, 872 F.2d 707 (6th Cir. 1989) (applying D'Oench to oral

contracts to repurchase loans); <u>Resolution Trust Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 594-95, 597 (11th Cir. 1995) (<u>D'Oench</u> applies to claims or defenses that relate to ordinary banking transactions regardless of whether a specific asset is involved); <u>Brookside Assocs. v. Rifkin</u>, 49 F.3d 490, 496 (9th Cir. 1995) (<u>D'Oench</u> applies to bar suit even when there is no specific asset involved);   <u>Jackson v. FDIC</u>, 981 F.2d at 734-35 (claims that do not diminish or defeat the FDIC's interest in any specific asset are nevertheless barred by <u>D'Oench</u>); <u>FDIC v. Texarkana Nat. Bank</u>, 874 F.2d 264 (5th Cir. 1989) (<u>D'Oench</u> applied to fraudulent inducement of another bank into a loan participation agreement); <u>Fair v. NCNB Texas Nat. Bank</u>, 733 F.Supp. 1099 (N.D.Tex. 1990) (<u>D'Oench</u> applied to fraudulent misrepresentations regarding property or securities sold by the lending bank); and <u>Carico v. First Nat. Bank of Bogata</u>, 734 F.Supp. 768 (E.D.Tex. 1990) (applying <u>D'Oench</u> to oral representations regarding dishonored checks).

As some courts have rationalized when declining to apply the no-asset exception espoused by Marina here, any obligor, anticipating a suit by FDIC might quickly pay off its note in an attempt to block FDIC's future intent to raise the <u>D'Oench</u> doctrine. Under these circumstances, "the fact that the obligor paid off the debt so that FDIC did not have an interest in an asset should not prohibit FDIC from invoking <u>D'Oench</u>". <u>Hall</u>, 920 F.2d at 339 (further holding that <u>D'Oench</u> has broader application than § 1823 and may be invoked even where FDIC does not have "an interest in an asset").

It is evident that <u>D'Oench</u>'s reach is broad, and even if an asset was not involved, <u>D'Oench</u> would also separately bar Marina's claims in the instant case.

In conclusion, the Court finds that Marina's claims are precluded by federal law, insofar as the agreement fails to comply with the requirements of Title 12, United States Code, § 1823(e) and the D'Oench doctrine.

### C. **D'Oench's continued validity.**

Marina's second line of defense from the FDIC-R's arguments is that D'Oench may not be good law any more in light of two Supreme Court rulings,[2] where the Supreme Court questioned the need to apply federal common law to state claims, and, Marina states, invalidated the federal common law outlined in D'Oench.   Plaintiff argues that here, as in the cases of O'Melveny and Atherton, the FDIC-R is simply acting as Doral's receiver, and is not pursuing the interest of the federal government as a bank insurer. Because of this, no unique federal interest exists, and the Court should thus disregard D'Oench, apply state law to its state claims, and allow claims under Puerto Rico law to proceed.

The Court disagrees. The issue in O'Melveny circled around whether federal or state law governed the tort liability of attorneys who provided services to the bank.   Thus, the issue before the Court was whether new federal common law should be *created* for that standard, not that an existing federal common law rule was invalidated.   The Court held ... "this is not one of those cases in which judicial creation of a special federal rule would be justified. Such cases are, as we have said in the past, 'few and restricted',

_____

[2] O'Melveny & Myers v. F.D.I.C., 512 U.S. 79, 114 S. Ct. 2048 (1994) and Atherton v. F.D.I.C., 519 U.S. 213, 117 S. Ct. 666 (1997).

(citations omitted), limited to situations where there is a 'significant conflict between some federal policy or interest and the use of state law.' " O'Melveny, 512 U.S. at 87, 114 S. Ct. at 2055. The Court declined to create new federal common law and held that state law applied.

Atherton dealt with a similar issue, namely, whether federal common law or state law should govern the standard of liability of directors and officers of federally insured savings institutions. The Supreme Court highlighted the necessity of a significant conflict or threat to a federal interest in order to apply federal common law. Finding no such substantial federal interest present there, the Court held that state law governed that standard: "[i]n sum, we can find no significant conflict with, or threat to, a federal interest". Atherton, 519 U.S. at 225, 117 S. Ct. at 673.

Thus, it is clear that the main holding in these two cases was that no new federal common law should be created, except in exceptional circumstances. See In re Consolidated Freightways Corp., 443 F.3d 1160, 1162 (9th Cir. 2006) (citing O'Melveny for the proposition that the creation of federal common law "is disfavored except where explicitly authorized by Congress"). Thus, contrary to Marina's arguments, O'Melveny and Atherton do not stand for the proposition that the D'Oench doctrine is no longer valid.

There is, however, a split in the circuits regarding the continued applicability of D'Oench after Atherton and O'Melveny were decided. Compare Inn at Saratoga Associates, 60 F.3d at 82; Young v. FDIC, 103 F.3d 1180 (4th Cir. 1997); State St. Capital Corp. v. Gibson Tile, Inc., Civ. No. 97-1329-P, 1998 WL 907027, at *5 (N.D. Tex. Dec. 16,

1998)[3] (all holding that <u>D'Oench</u> is still applicable post <u>O'Melveny</u>) to <u>Ledo Financial Corp. v. Summers</u>, 122 F.3d 825 (9th Cir. 1997), <u>DiVall Insured Income Fund Ltd. Partnership v. Boatmen's First Nat'l Bank of Kansas City</u>, 69 F.3d 1398, 1402 (8th Cir. 1995), and <u>Murphy v. FDIC</u>, 61 F.3d 34, 38 (D.C.Cir. 1995) (finding <u>D'Oench</u> has been preempted by the FIRREA after <u>O'Melveny</u>).

Although the First Circuit has not explicitly entertained this issue, its continued use and application of the <u>D'Oench</u> doctrine, after <u>O'Melveny</u> and <u>Atherton</u> were decided, tends to suggest that it still finds <u>D'Oench</u> to be good law.   <u>See</u> *e.g.* <u>F.D.I.C. v. Estrada-Rivera</u>, 722 F.3d 50, 53 (1st Cir. 2013) (stating that <u>D'Oench</u> "prevents plaintiffs from asserting as either a claim or defense against the FDIC oral agreements or 'arrangements.'") and <u>F.D.I.C. v. Empresas Cerromonte Corp.</u>, Civ. No. 10-1623, 2013 WL 5346725, at *7 (D. P.R. Sept. 23, 2013) (stating that 12 U.S.C. § 1823(e) and <u>D'Oench</u> prevent the assertion of unwritten agreements against the FDIC as receiver).

In view of the above, the Court finds that the <u>D'Oench</u> rule is still valid in the First Circuit.

### D. <u>D'Oench</u> and state law claims.

Marina's also raises as a defense that <u>D'Oench</u> does not apply to its state law claims for breach of contract, breach of the principle of good faith, fraudulent inducement, tortious interference with a contract and *culpa in contrahendo*.   While the Court is

---

[3] Holding that in the absence of any Fifth Circuit ruling on the matter, that district court found <u>D'Oench</u> was still applicable.

_____

cognizant that Puerto Rico law allows for the claims alleged by Marina herein, the applicability of the aforementioned federal law also precludes them from being brought in this particular circumstance where the FDIC-R, who was not an original defendant in state court, removed the case to this Court.

In the case of <u>Timberland Design, Inc.</u>, 932 F.2d at 50, the First Circuit held that the <u>D'Oench</u> doctrine " 'bars defenses and affirmative claims whether cloaked in terms of contract or tort, as long as those claims arise out of an alleged secret agreement' " and further, that section 1823(e) " 'bars defenses and affirmative claims' " arising out of an agreement which fails to meet its requirements " 'whether cloaked in contract or tort'". Since then, many courts have abided by this holding.   <u>See</u> <u>McCullough v. F.D.I.C.</u>, 987 F.2d 870, 874 (1st Cir. 1993) ("the genesis of plaintiffs' claim, whether the claim is framed in contract or tort, is the alleged warranty….as such, the claim is barred" by <u>D'Oench</u>); <u>Vasapolli v. Rostoff</u>, 39 F.3d 27, 33 (1st Cir. 1994) (stating that claims of misrepresentation and fraudulent inducement were "within <u>D'Oench's</u> 'sphere of influence'"); <u>Ne. Cmty. Dev. Grp. v. F.D.I.C.</u>, 948 F. Supp. 1140, 1151 (D.N.H. 1995) (claims "based on alleged misrepresentations relating to the formation of an agreement with [a] bank" were within the purview of <u>D'Oench</u>); <u>First Nat. Bank of Boston v. F.D.I.C.</u>, Civ. No. 92-12222-Y, 1993 WL 443917, at *3 (D. Mass. Sept. 30, 1993) (an action concerning priority of liens barred by <u>D'Oench</u> if there was fraud or bad faith in the inducement to make the agreement); <u>Winterbrook Realty, Inc. v. F.D.I.C.</u>, 820 F. Supp. 27, 32 (D.N.H. 1993) (state claims for misrepresentation, equitable relief, unjust enrichment and

_____

*quantum meruit* barred by D'Oench).

In the instant case, it is evident that all of Plaintiff's claims of principle of good faith, fraudulent inducement, tortious interference with contract and *culpa in contrahendo* arise from Doral's failure to abide by the unwritten, oral agreement Marina claims was reached between them for the remainder of the project's financing. These actions by Doral, in turn, allegedly caused the project's ultimate failure. Because the state law claims all clearly arise from the oral agreement, Timberland Design and its progeny control, and D'Oench estops Marina from bringing these claims.

To allow the state law claims to proceed would permit a party to solely assert state claims against a failed bank in order to contravene D'Oench, thus defeating the rationale of the statute and the doctrine, which is to "ensure that FDIC examiners can accurately assess the condition of a bank based on its books". Jackson, 981 F.2d at 735. To side with Marina would defeat the purpose and principle of the protection which Congress and the courts saw fit to bestow upon the FDIC.

The Court therefore finds that, because Marina's state law claims are based on the unwritten agreement, they are also precluded by D'Oench.

## E. Discovery.

Plaintiff Marina's last contention is that summary judgment should not be granted because there are outstanding discovery requests. Specifically, Marina asserts that in September, 2016, it requested from the FDIC-R certain insurance policies that were in effect at the time the events in this case arose. Marina posits that, with this information

_____

of the failed bank's insurance carriers, "... the insurance companies would be included as additional defendants in the instant case to respond for the tortious acts of the bank officers".    Docket No. 90, p. 25.

This case began in state court in 2006, twelve (12) years ago, and was removed to this court by the FDIC-R in 2015.    Thus, the case at bar has been before this Court for over two (2) years after it was removed.    Now, after discovery has already concluded, and when Plaintiff sees itself literally between a rock and a hard place, it now alleges that it intends to bring forth the insurance carriers in this case because the federal statutes and D'Oench "are not extensive" to insurance carriers.    Plaintiff also contends that it is "in the best interests of the F.D.I.C. that such insurance carriers are included as additional defendants in this lawsuit".     Docket No. 115, at 16.

The Court is at a loss to understand precisely why the insurance carriers have not been brought into the case in the *twelve (12) years* that this case has been going on. What is worse, while Marina initially brought this issue before the Court in June, 2017, the Court understood this matter had been resolved in July, 2017, at Docket No. 95. Furthermore, the FDIC-R has demonstrated that, as part of the agreement reached at that time between the parties, on September 1, 2017, it sent Plaintiff a draft ESI Protocol and Protective Order in order to end this matter, and Plaintiff failed to respond to the same. While the Court is cognizant of the damages Hurricane María effected in Puerto Rico, as of November, 2017, Plaintiff has still failed to respond to this request, thus hampering its own efforts at discovery.    The fact that as of February, 2018, no request has been made

by Plaintiff to amend the complaint to add said insurance companies is telling.

Plaintiff Marina is the party requesting the documents and, therefore, has a duty to be diligent. Plaintiff Marina's tardy request, at summary judgment stage, lacks merit as it is being made after the conclusion of discovery and when no request to amend the complaint to add additional claims and parties has been made. "Equity, after all, ministers to the vigilant, not to those who slumber upon their rights". Sandstrom v. ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990).[4] The Court denies Marina's request.

## CONCLUSION

For all the aforementioned reasons, the Court GRANTS the FDIC-R's "Second Motion for Summary Judgment" (Docket No. 81). This case is DISMISSED WITH PREJUDICE.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 23rd day of February, 2018.

> S/CAMILLE L. VELEZ-RIVE
> CAMILLE L. VELEZ RIVE
> UNITED STATES MAGISTRATE JUDGE

---

[4] The Court notes that the defense of laches might apply to this case, which bars a party from asserting a claim if it so unreasonably delayed in bringing the claim that it caused some injury or prejudice to the defendant. See Costello v. United States, 365 U.S. 265, 282, 81 S.Ct. 534 (1961); Puerto Rican-Americans Ins. Co. v. Benjamin Shipping Co., Ltd., 829 F.2d 281, 283 (1st Cir. 1987). This defense has not been raised by the FDIC-R.